**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-4625-WJM

FELIX PABLO VEGA ALVAREZ,

Petitioner,

v.

GEORGE VALDEZ, in his official capacity as Acting Field Office Director, Denver Field Office, Immigration and Customs Enforcement, *et al*.

Respondents.

---

**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Felix Pablo Vega Alvarez's Verified Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1). Respondents George Valdez, in his official capacity as Acting Field Office Director of the Denver Field Office, Immigration and Customs Enforcement ("ICE"); Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); Markwayne Mullin, in his official capacity as Secretary of Department of Homeland Security ("DHS"); and Todd Blanche, in his official capacity as Attorney General of the United States Department of Justice (collectively, "Respondents" or the "Government") filed a cursory response. (ECF No. 7).

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Vega Alvarez is an asylum seeker from Cuba. (ECF No. 1 at 1.) He first entered the United States on July 22,

2014, and presented himself to U.S. Customs and Border Protection officers. (*Id.*) "The officers conducted an initial examination of Petitioner and determined that he would be paroled in to allow him to continue the asylum process . . . in removal proceedings before an immigration judge." (*Id.* at 1–2.) But he was then "released to live with his sister, a lawful permanent resident." (*Id.* at 2.)

On January 7, 2026, ICE detained Vega Alvarez. (*Id.* at ¶ 1.) ICE never produced an administrative warrant authorizing Vega Alvarez's detention. (*Id.* at 2.) ICE also did not issue a notice to appear in Vega Alvarez's case until February 14, 2026. (*Id.* at ¶ 4.) Vega Alvarez also never received any individualized determination of flight risk or danger. (*Id.* at 2.) He remains detained at the DCDF. (*Id.* at ¶ 11.)

On March 22, 2026, Respondents classified Vega Alvarez as an "Arriving Alien." (ECF No. 1-3 at 1.) Respondents rely on his classification as an "Arriving Alien" "to deny Petitioner a bond hearing." (ECF No. 1 at ¶ 26.)

Vega Alvarez challenges the legality of his detention. (*Id.* at ¶¶ 27–49.) Among other relief, he asks the Court to issue a writ of habeas corpus requiring Respondents to release him from custody within 48 hours, or alternatively, order Respondents to provide a constitutionally adequate individualized bond hearing within 7 days. (*Id.* at 15.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in

violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Vega Alvarez claims that his detention violates DHS's own regulations and the Immigration and Nationality Act ("INA") (Count I) and that the INA does not authorize his mandatory detention under 8 U.S.C. § 1225 (Count II). In the alternative, Vega Alvarez claims that if he is lawfully detained under § 1226(a), then due process entitles him to a meaningful individualized custody determination (Count III). The Court need only reach Vega Alvarez's claims that his detention violates the INA and the DHS's regulations to resolve the Petition. The Court first addresses Count II before proceeding to Count I because whether Vega Alvarez is subject to § 1225 or § 1226 dictates the outcome of Count I.

### A. Sections 1225(b) and 1226(a)

Vega Alvarez claims that Respondents' invocation of § 1225 is unlawful because "[w]hatever Petitioner may have been seeking at the [port of entry] in July 2014, he was not seeking permission to 'enter' the United States when ICE arrested him in the interior almost twelve years later." (ECF No. 1 at ¶ 8.) Respondents responded without addressing this claim, instead declining to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 7 at 1.) In any case, the Tenth Circuit's decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026)

leaves little to debate. Vega Alvarez is correct.

In *Santillan Quiroz*, the Tenth Circuit considered "whether § 1225(b)(2)(A) or §1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since." *Id.* at 1235, 1233. Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[1] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. The Tenth Circuit based its holding in significant part on its interpretation of the phrase "seeking admission," as it is used in § 1225(b)(2)(A). *Id.* at 1237–40. It reasoned: "A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at 1239. Thus, "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.* By extension, "§ 1225(b)(2)(A) is likewise limited to the border." *Id.*

The material facts here are indistinguishable from those summarized in *Santillan Quiroz*. Like the § 2241 petitioner in that case, Vega Alvarez had already entered the United States—notably after Respondents had already released him shortly after entry—when he was detained in January 2026. Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Vega Alvarez.

**B. Regulatory and other INA Violations**

Vega Alvarez also alleges that Respondents violated several DHS regulations and the INA by detaining him. The Court agrees with this contention as well.

[1] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)." *Id.* at 1237 n.6. But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Vega Alvarez]." *Id.*

"§ 1226(a) authorizes arrest and detention only '[o]n a warrant issued by the Attorney General.' " *Limon Soto v. Valdez*, 2026 WL 2664193, at *2 (D. Colo. Sept. 10, 2026) (quoting 8 U.S.C. § 1226(a)). Thus, "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (emphasis in original); *see Limon Soto*, 2026 WL 2664193, at *2 (same).

Here, Respondents' detention of Vega Alvarez violates the INA and the relevant regulations. Respondents failed to obtain an administrative warrant before detaining Vega Alvarez. As explained above, Respondents do not point to the existence of any administrative warrant and do not even attempt to justify the warrantless arrest. In a similar case, Judge Philip A. Brimmer of this District also concluded that "given petitioner's unrefuted claim that the Notice to Appear was not issued until after petitioner's arrest, the Court finds that the Form I-200 warrant was invalid. Therefore, petitioner was not arrested pursuant to a valid warrant, in contravention of 8 U.S.C. § 1226(a)." *Martinez-Salamanca v. Baltazar*, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026). Not only was the Notice to Appear issued over a month after Vega Alvarez was detained, but, as noted above, nothing in the record indicates that Respondents ever produced an administrative warrant to justify his arrest.

Similarly, 8 C.F.R. § 236.1(b)(1) provides that "*[a]t the time of issuance of the notice to appear*, . . . the [noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." (emphasis added). As such, a noncitizen cannot be arrested and detained without a notice to appear being issued first. The

events in this case occurred in the reverse order. ICE detained Vega Alvarez first and only issued the notice to appear "***more than 38 days—over five weeks***—after he was taken into custody." (ECF No. 1 at 2 (emphasis in original).)

DHS regulations also require that "a determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time . . . ." 8 C.F.R. § 287.3(d). Nothing in the records shows that such an emergency or extraordinary circumstances exist here. And so, the lack of an individualized determination of flight risk or danger as to Vega Alvarez violates 8 C.F.R. § 287.3.

The Court therefore concludes that Vega Alvarez's detention violates 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 236.1 and 287.3. Given the Court's conclusion that Vega Alvarez's detention is unlawful under the INA, the Court need not reach Count III.

**C. Remedy**

The Government declined to substantively address Vega Alvarez's claims. (ECF No. 7 at 1.) It even acknowledges that "the Court may then decide to grant the Petition and award appropriate relief, *including release*." (*Id.* (emphasis added).) Vega Alvarez requests release but alternatively requests a bond hearing. (ECF No. 1 at 15.)

In the Court's view, a bond hearing will not serve as adequate relief. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a

bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Vega Alvarez's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and Vega Alvarez's Petition (ECF No. 1) is GRANTED.

2. The Court GRANTS this relief to Vega Alvarez pursuant to Counts I and II of the Petition. The Court does not reach the merits of Count III.

3. **By no later than this Thursday, October 8, 2026,** Respondents shall IMMEDIATELY RELEASE Vega Alvarez on his own recognizance, along with all his personal belongings, and they shall facilitate Vega Alvarez's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

4. **No onerous conditions of release shall be imposed on Vega Alvarez by Respondents**, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

5. Respondents are ENJOINED from re-arresting or re-detaining Vega

Alvarez unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Vega Alvarez shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Vega Alvarez from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. Should Vega Alvarez believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **November 3, 2026**. Respondents shall file a response by no later than **November 24, 2026**, and Vega Alvarez shall file a reply by no later than **December 8, 2026**; and

8. Judgment shall enter in Vega Alvarez's favor and against Respondents on **October 20, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 6th day of October, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge